KNEELAND LIQUOR, INC. *vs.* ALCOHOLIC BEVERAGES CONTROL
COMMISSION
(and two companion cases[1]).

Suffolk. November 8, 1962. — December 12, 1962.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Alcoholic Liquors,* Schedule of minimum consumer prices, License. *State Administrative Procedure Act. Regulation. Waiver. Estoppel.*

A foreign corporation admitted to do business in Massachusetts, a liquor manufacturer owning a brand and holder of a license under G. L. c. 138, § 18A, to act as broker, agent or solicitor, was authorized by § 25C (c) (1) to file a schedule of minimum consumer prices. [231–233]

Approval by the Alcoholic Beverages Control Commission of a filed schedule of minimum consumer prices for liquor under G. L. c. 138, § 25C (d), constitutes adoption of a "regulation" by an "agency" within the State Administrative Procedure Act, G. L. c. 30A. [233–234]

Failure of a retail liquor dealer to seek a hearing by the Alcoholic Beverages Control Commission under the State Administrative Procedure Act, G. L. c. 30A, prior to the commission's approval of a filed schedule of minimum consumer prices under c. 138, § 25C (d), was not a waiver of his right to such a hearing and did not estop him from raising want of a hearing as a ground for attacking the validity of the schedule in a proceeding by him under c. 30A for review of a suspension of his license for selling liquor at a price less than the scheduled price. [234]

Approval by the Alcoholic Beverages Control Commission of a filed schedule of minimum consumer prices under G. L. c. 138, § 25C (d), without the notice and hearing afforded by the State Administrative Procedure Act, c. 30A, in connection with adoption of a "regulation," or the findings under either § 2 (3) or § 3 (3) of c. 30A prescribed for dispensing with notice and hearing, or filing of the approval with the State Secretary as required by § 5 of c. 30A, was invalid and the minimum prices in the schedule were not legally established. [235]

THREE PETITIONS for review filed in the Superior Court on May 2, 1961, and July 10, 1961.

---

[1] The companion cases are by Macy's Liquor, Inc., and Peter J. Monahan, Inc., against the same respondent.

The cases were heard by *Morton, J.*

*William L. Mahoney, Jr.,* Assistant Attorney General, for the respondent.

*Julius H. Soble* for the petitioners.

*John F. X. Gaquin & John D. O'Reilly, Jr.,* for the Massachusetts Package Stores Association, Inc., amicus curiae, submitted a brief.

WILKINS, C.J. These are petitions for review brought by three alcoholic beverage package store licensees in Boston against the Alcoholic Beverages Control Commission under G. L. c. 30A, § 14. Each licensee was charged with the violation of G. L. c. 138, § 25C (as amended through St. 1952, c. 567, § 1), by selling one or two bottles of a named brand whiskey at a price less than the minimum consumer resale price. The commission found that each had violated the statute and suspended their licenses. In the Superior Court a judge ruled that the commission failed to comply with various statutory provisions. A final decree was entered in each case setting aside the decision of the commission and the suspension of the licenses. The commission appealed.

The judge made a report of the material facts found by him and an order for decree, which we summarize. In each case a schedule of prices was filed by Glenmore Distilleries Company, the holder of a license to act as broker, agent, or solicitor. The license was issued by the commission pursuant to G. L. c. 138, § 18A,[1] which the judge ruled was in-

---

[1] Section 18A, as amended by St. 1935, c. 440, § 17, so far as material reads: "The commission may issue to any individual who is both a citizen and resident of the commonwealth . . . or to any corporation organized under the laws of the commonwealth or organized under the laws of any other state . . . and admitted to do business in the commonwealth, a license which shall authorize the licensee to act as agent, broker or solicitor for any specified individual, corporation or partnership in another state . . . engaged in the business of manufacturing, importing or selling alcoholic beverages, hereinafter called the principal, and, on behalf of such principal, to solicit orders for such beverages from holders of licenses under section eighteen. A license granted hereunder shall authorize representation of one principal only, but the licensee may also, in the discretion of the commission, be licensed hereunder to represent other principals. No licensee hereunder shall buy or sell alcoholic beverages for his own account, and no such beverages shall be brought into the commonwealth in pursuance of the exercise of such a license otherwise than through a licensee under said section eighteen . . . ."

sufficient to authorize a filing by "this type of person" under G. L. c. 138, § 25C (c). The license, the judge commented, authorized the licensee to solicit orders from wholesalers but not to file schedules of prices. Other respects in which the judge ruled that the commission had not complied with statutes were these: (1) Failure to give notice of hearing and to hold a hearing as required by c. 30A, § 2, prior to its approval of the filed schedule of prices as not "excessive, inadequate, or unfairly discriminatory." See G. L. c. 138, § 25C (d). (2) Failure to file with the Secretary of the Commonwealth its approval of prices, and "there is no evidence that a list designated as a 'Minimum Consumer Resale Price List' was compiled, published and mailed to each package store licensee as required by the statute." (3) Failure to act upon the petitioners' motions to dismiss. (4) Failure to act upon the petitioners' requests for rulings as required by G. L. c. 30A, § 11 (8). (5) The decision of the commission in each case was not accompanied by the reasons for it. (6) The decision in each case failed to notify the petitioner of its right to court review and of the time limit on the exercise of that right.

General Laws c. 138, § 25C, begins: "(a) No brand of alcoholic beverages shall be sold within the commonwealth to a wholesaler or retailer, and no manufacturer or wholesaler shall sell, offer for sale, solicit any order for, or advertise, any alcoholic beverages, the container of which bears a label stating the brand or the name of the owner or producer, unless a schedule of minimum consumer prices for each such brand of alcoholic beverages shall first have been filed with the commission and is then in effect."

Subparagraph (b) prescribes the contents of the schedules.

Subparagraph (c) enumerates three categories of persons who may file schedules.

Subparagraph (d) provides for the filing of bimonthly schedules, and concludes with the sentence, "No such filing, however, shall take effect unless within thirty days thereafter the commission has *approved* the said prices as not

being excessive, inadequate, or unfairly discriminatory.'' The word *in* supplied italics is the principal source of controversy in the cases at bar.

Subparagraph (e) provides in part for inspection of schedules by licensees and the public, and contains the sentence, ''Each manufacturer and wholesaler shall retain in his licensed premises a copy of his filed schedules, and shall, as soon as practicable after the tenth day of the month in which such schedules are filed, compile, publish and mail to each retailer authorized to sell alcoholic beverages for off-premises consumption, a list, to be designated 'minimum consumer resale price list.' '' The list is to be conspicuously displayed in licensed premises where sales are made.

Subparagraph (f), in part, reads, ''No licensee authorized to sell alcoholic beverages at retail for off-premises consumption shall sell, offer to sell, solicit an order for, or advertise, any alcoholic beverages at a price less than the minimum consumer resale price then in effect, unless written permission of the commission is granted . . . .''

Subparagraph (g), after authorizing the commission to make rules on certain subjects and again providing for public inspection of all schedules, prescribes: ''For the violation of any provision of this section or any rule or regulation duly promulgated under this section, the commission may suspend a license as follows: — for a first offence, not exceeding six days suspension of license; for a second offence, not exceeding fifteen days suspension of license; and for each subsequent offence, thirty days suspension of license.''

These cases might be disposed of on a narrower ground, but many questions argued have never been adjudicated, and the parties have urged us to indicate our views upon them.

1. The first question is whether the schedules were filed by an authorized person for, if they were not, there was no foundation for the subsequent proceedings. This requires interpretation of G. L. c. 138, § 25C (c) which provides that the ''schedule shall be filed by (1) the manufacturer or

wholesaler who owns such brand, if licensed by the commission," or by either of two categories of wholesalers not presently material.

Here the schedules were filed by Glenmore Distilleries Company (Glenmore), a corporation of Kentucky, which is a manufacturer which owns the brand. The only license held by Glenmore was in the disjunctive, namely, as agent, broker, or solicitor under G. L. c. 138, § 18A, as amended. This license is described in a certificate of the executive secretary of the commission as "Agent, Broker or Solicitor's license No. B–16, for 1961 . . . in the name of Glenmore Distilleries Company, located at 31 St. James Avenue, Boston, as licensee for themselves, as principal at location of 660 S. Fourth Street, Louisville, Kentucky." The license as issued contains restrictions based on § 18A, such as, "This license authorizes the holder to solicit orders for alcoholic beverages from holders of Wholesalers' and Importers' licenses only. This license is subject to the following conditions. 1. No solicitation of orders for alcoholic beverages shall be made except on behalf of the principal named in this license. 2. A licensee hereunder shall not buy or sell alcoholic beverages for his own account. . . ."

The precise issue is whether the words "the manufacturer . . . who owns such brand, if licensed by the commission," embrace the type of license held by Glenmore, which, so far as appears, is the only type of license Glenmore could obtain as an out of State manufacturer. The petitioners contend that the license is not so embraced, and, in effect, argue that it is an absurdity for Glenmore to be both a principal and an agent for itself. But Glenmore can be a solicitor on its own behalf. Even if barred from selling under § 18A and the terms of its license, it has been admitted to do business as required in § 18A, and can solicit from holders of licenses under § 18, namely holders of wholesalers' and importers' licenses. The terms of the license issued to Glenmore, which was relied on to some extent by the trial judge, are of no present pertinency.

There was error in the ruling that the schedules were not properly filed.

2. The commission is an agency within G. L. c. 30A, § 1 (2). *Springfield Hotel Assn. Inc.* v. *Alcoholic Beverages Control Commn.* 338 Mass. 699, 701. *Miller* v. *Alcoholic Beverages Control Commn.* 340 Mass. 33, 34. The underlying question raised by the word "approved" in § 25C (d) is whether the commission's setting of minimum prices amounts to a regulation under G. L. c. 30A, § 1 (5), the State Administrative Procedure Act. Massachusetts Package Stores Association, Inc., in its brief as amicus curiae,[1] argues the negative of this proposition. The commission also argues the negative, contending that the approval "requires only an administrative or ministerial action" on its part. It urges that the ruling of the trial judge would place upon it an insuperable burden.

In c. 30A, § 1, inserted by St. 1954, c. 681, § 1, among definitions, we read, "(5) 'Regulation' includes the whole or any part of every rule, regulation, standard or other requirement of general application and future effect adopted by an agency to implement or interpret the law enforced or administered by it . . . ."

We are of opinion that the approval of the schedules by the commission is a regulation and does fall within c. 30A. The public welfare is involved. *Dacey* v. *Milk Control Commn.* 340 Mass. 681, 685. See *Allied Theatres of New England, Inc.* v. *Commissioner of Labor & Indus.* 338 Mass. 609, 611. The establishment of retail prices for customers of retail stores is an exercise of the police power in order to promote temperance, to stabilize the business, to avoid price wars, to instill observance of the law, and to protect the public. See *Supreme Malt Prod. Co. Inc.* v. *Alcoholic Beverages Control Commn.* 334 Mass. 59, 62. The schedules are privately prepared and filed, and acquire no efficacy until after the commission has acted. But when approval has been given, a public policy has been established, and a

---

[1] Notwithstanding the title and statements in its brief the association is not an intervener.

number of legal consequences follow, as the present cases amply show. The "general obligation and the main power" in setting minimum prices rests with the commission. See *Simpson* v. *Marlborough,* 236 Mass. 210, 214. The approval constituted a "requirement of general application and future effect adopted by an agency to implement or interpret the law enforced or administered by it." See *Bond Liquor Store, Inc.* v. *Alcoholic Beverages Control Commn.* 336 Mass. 70, 75.

It is unnecessary to discuss most of the cases cited in the brief of the amicus curiae. Some were decided before the enactment of the State Administrative Procedure Act. Others relate to approval by officials, such as a mayor, or bodies not subject to the State Administrative Procedure Act. The cited cases, for the most part, concern the responsibility of checking on official decisions made at a subordinate level to prevent hasty, ill-advised action in relatively minor matters, such as approving contracts and stock plans. See *Leroy* v. *Worcester St. Ry.* 287 Mass. 1, 8.

Such cases as were decided subsequent to the effective date of c. 30A[1] in no way support the argument of the amicus curiae. In *Concord* v. *Attorney Gen.* 336 Mass. 17, the Attorney General, in carrying out the duty imposed upon him by G. L. c. 40, § 32, as amended, to approve a by-law adopted by a town, was not acting with respect to a regulation as defined in G. L. c. 30A, § 1 (5). There was no rule or regulation "adopted by an agency to implement or interpret the law enforced or administered by it."

The commission unsoundly contends that the petitioners never sought to be heard or questioned the prices, and should be estopped from raising the issue of the denial of hearing. The right to a hearing under c. 30A is not to be treated as waived merely by not insisting upon the right to be heard. See *Allied Theatres of New England, Inc.* v. *Commissioner of Labor & Indus.* 338 Mass. 609, 611; *United States* v. *McCrillis,* 200 F. 2d 884, 886 (1st Cir.).

---

[1] July 1, 1955. St. 1954, c. 681, § 22.

If the result of this decision upon this point is to place an insuperable burden upon the commission, there must be resort to the Legislature.

3. The judge ruled that the approval is a regulation which falls within c. 30A, § 2, as to the requirement of notice and hearing. The petitioners seem to agree with that ruling. The commission disagrees and contends that, if c. 30A is applicable, § 3 would be the pertinent section. The importance of the distinction lies in the procedure should the agency consciously decide not to hold a hearing. See Curran and Sacks, The Massachusetts Administrative Procedure Act, 37 B. U. L. Rev. 70, 80 et seq. In the circumstances we express no opinion on the question. The commission does not concede that this is a regulation at all, and naturally did not make any finding of emergency under § 2 (3) or finding that notice and hearing were unnecessary, impracticable or contrary to public interest under § 3 (3). Likewise, no statement was incorporated in the regulation or filed with the State Secretary as required by either § 2 (3) or § 3 (3).

Inasmuch as there was no compliance with either § 2 (3) or § 3 (3), the regulations were invalidly enacted and there was no legally established minimum sale price.

4. The judge ruled correctly that there was a failure to file the approval of the schedules with the State Secretary, as required by c. 30A, § 5. This would follow automatically from our holding that such action was the making of a regulation.

5. The judge stated that there was no evidence that a minimum consumer resale price list was compiled, published, and mailed to each package store licensee. This was not a finding. The pertinent statute is G. L. c. 138, § 25C (e), and the duty is imposed upon "each manufacturer and wholesaler." It is not a duty of the commission, which, nevertheless, should be alert to see that the requirements of the statute are carried out.

6. The other supposed omissions enumerated by the judge relate wholly to hearing procedure under c. 30A,

§ 11 (8).   These we do not reach.   As to them, it is enough to say that they would at most be failures which, by themselves, would call merely for remanding the matters for further proceedings before the agency.   G. L. c. 30A, § 14 (8).

7.   As the question has been mentioned in the amicus brief but has not been argued, we do no more than refer to G. L. c. 138, § 71, requiring that all rules and regulations made by the commission under this chapter shall not take effect until approved by the Governor and Council.

8.   By reason of the failure to comply with G. L. c. 30A, the decision of the commission in each case should be set aside.

*Final decrees affirmed.*